# AIMAN-SMITH & MARCY
PROFESSIONAL CORPORATION

Randal B. Aiman-Smith, #124599
Reed W.L. Marcy, #191531
Hallie Von Rock, #233152
Brent A. Robinson, #289373
Lisseth Bayona, #338135
7677 Oakport St., Suite 1150
Oakland, CA 94621
T 510.817.2711
F 510.562.6830
ras@asmlawyers.com
rwlm@asmlawyers.com
hvr@asmlawyers.com
lb@asmlawyers.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

SERENA NARO, individually and on behalf of all others similarly situated; TRISH GONZALES, individually and on behalf of all others similarly situated; AND THE CALIFORNIA LABOR AND WORKFORCE DEVELOPMENT AGENCY *ex rel*. SERENA NARO AND TRISH GONAZALES, a California governmental entity,

        Plaintiff,

    v.

WALGREEN CO., an Illinois corporation; and WALGREEN PHARMACY SERVICES MIDWEST, LLC, an Illinois corporation; and DOES 1-15,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 4:22-cv-03170-JST

Assigned for All Purposes to:
Hon. Jon S. Tigar
Courtroom 6

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA REPRESENTATIVE ACTION SETTLEMENT**

Date:  August 8, 2024
Time: 2:00 P.M.
Dept: 6

Complaint Filed: May 31, 2022

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................... 1

II.     FACTUAL BACKGROUND ..................................................................................... 1

III.    PROCEDURAL HISTORY ........................................................................................ 2

        A.    Plaintiffs' Claims .......................................................................................... 2

        B.    Discovery ...................................................................................................... 4

        C.    Settlement Negotiations ................................................................................ 4

IV.     ARGUMENT.............................................................................................................. 6

        A.    The Court Should Grant Preliminary Approval of the Settlement ............... 6

        B.    The Court Should Certify the Settlement Class............................................ 6

              1.    The Class Members are numerous and ascertainable............................7

              2.    Plaintiffs' claims raise common issues of fact or law. .......................7

              3.    Plaintiffs' claims are typical of the claims of the Class. .....................8

              4.    Plaintiffs and Class Counsel will adequately represent the Class. ........8

              5.    The Rule 23(b)(3) requirements for class certification are also met....9

        C.    The Terms of the Settlement Are Fair, Reasonable, and Adequate........... 10

V.      THE PROPOSED SETTLEMENT MEETS THE NORTHERN DISTRICT OF
        CALIFORNIA'S PROCEDURAL GUIDELINES FOR CLASS ACTION
        SETTLEMENTS ...................................................................................................... 11

        A.    Information About the Settlement ............................................................... 11

              1. Settlement Class ...................................................................................11

              2. Released Claims ....................................................................................12

        B. The Proposed Settlement Is a Reasonable Compromise of Claims................. 14

        C.    Cases Affected by the Settlement. .............................................................. 17

        D.    The Proposed Allocation Plan. ................................................................... 17

        E.    Settlement Administration. ......................................................................... 18

        F. Notice and Settlement Administration. ......................................................... 19

---

i

G. Requests for Exclusion from the Settlement. ................................................... 20

H. Objections to the Settlement. ............................................................................. 20

I. Attorney's Fees and Costs Are Reasonable. ...................................................... 21

J. Service Awards to Representative Plaintiffs...................................................... 22

K. *Cy Pres* Recipient. .............................................................................................. 23

M. CAFA Notice. .................................................................................................... 23

VI.    CONCLUSION ....................................................................................................... 26

ii

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA REPRESENTATIVE ACTION SETTLEMENT**
*Naro, et al. v. Walgreen Co., et al.*

# TABLE OF AUTHORITIES

**Cases**

*Carrington v. Starbucks Corp.,* 30 Cal.App.5th 504 (2018) ................................................. 16

*Fry v. Hayt, Hayt & Landau,* 198 F.R.D. 461 (E.D. Pa. 2000) ........................................... 7, 8

*Gonzalez v. Southern Wine & Spirits of Am., Inc.*, 555 Fed.Appx. 704 (9th Cir. 2014) ........ 21

*Ikonen v. Hartz Mountain Corp.,* 122 F.R.D. 258 (S.D. Cal. 1988)........................................ 7

*In re Activision Sec. Litig.*, 723 F.Supp. 13739N.D.Cal. 1989)........................................... 22

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir.2000).......................................... 10

*Laffitte v. Robert Half International, Inc.,* 1 Cal.5th 480 (2016).......................................... 22

*Mangold v. Cal. Pub. Utils. Comm'n,* 67 F.3d 1470 (9th Cir. 1995)..................................... 21

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)....................... 10, 11

*Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012) ............................................................. 21

*Romero v. Producers Dairy Foods, Inc.,* 235 F.R.D. 474 (E.D. Cal. 2006) ........................... 7

*Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 ................................... 22

*Soto et al. v. O.C. Communications, Inc., et al.*, Case No. 3:17-cv-00251-VC, ECF 304

   (N.D. Cal. Oct. 23, 2019) .............................................................................................. 22

*Staton v. Boeing Co.,* 327 F.3d 938 (9th Cir. 2003) ............................................................ 23

*Van Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294 (N.D. Cal. 1995) ................................. 23

*Viceral v. Mistras Grp., Inc.*, Case No. 15-cv-2198-EMC, 2016 WL 5907869

   (N.D. Cal. Oct. 11, 2016).............................................................................................. 10

*Wang v. Chinese Daily News, Inc.,* 737 F.3d 538 (9th Cir. 2013)....................................... 7, 9

**Statutes**

28 U.S.C. §1715(b) .......................................................................................................... 24

Cal. Lab. Code § 2802 ....................................................................................................... 2

iii

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA REPRESENTATIVE ACTION SETTLEMENT**
*Naro, et al. v. Walgreen Co., et al.*

**Rules**

Fed.R.Civ.P. 23(a)............................................................................................. 6, 7, 8

Fed.R.Civ.P. 23(b) ............................................................................................ 7, 9

iv

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA REPRESENTATIVE ACTION SETTLEMENT**
*Naro, et al. v. Walgreen Co., et al.*

Plaintiffs Serena Naro and Trish Gonzales ("Plaintiffs") and Defendants Walgreen Co. and Walgreen Pharmacy Services Midwest, LLC ("Walgreens" or "Defendants," and together with Plaintiff, "the Parties") hereby submit this joint case management statement pursuant to this Clerk's Notice Continuing Case Management Conference entered November 6, 2023. *See*, ECF Nos. 56-57.

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on August 8, 2024, at 2:00 P.M., or as soon thereafter as the Court may hear them, in Courtroom 6, 1301 Clay Street, Oakland, CA, 94612, before Hon. Jon S. Tigar of the United States District Court, Northern District of California, Plaintiffs Serena Naro and Trish Gonazles, on behalf of themselves and all others similarly situated ("Plaintiffs"), move the Court for preliminary approval of the Class Action and Private Attorneys General Act Settlement Agreement and Release (the "Settlement Agreement" or the "Settlement," attached as **Exhibit 1** to the accompanying Declaration of Hallie Von Rock). The Settlement resolves all of the claims in this action on a class basis. In particular, Plaintiffs move for orders:

(1)     Granting preliminary approval of the Settlement Agreement;

(2)     Conditionally certifying the Settlement Class for settlement purposes;

(3)     Approving the proposed schedule and procedure for completing the final approval process for the Settlement, including setting the Final Approval Hearing;

(4)     Approving the Class Notice as it pertains to the Class (attached as **Exhibit A** to the Settlement Agreement);

(5)     Approving the Postcard Class Notice as it pertains to the Class (attached as **Exhibit B** to the Settlement Agreement);

(6)     Preliminarily appointing and approving Aiman-Smith & Marcy PC as Class Counsel for the Settlement Class;

(7)     Preliminarily approving Class Counsel's request for attorneys' fees and costs;

---

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA REPRESENTATIVE ACTION SETTLEMENT**
*Naro, et al. v. Walgreen Co., et al.*

(8)    Preliminarily appointing and approving Plaintiffs Serena Naro and Trish Gonzales as Class Representatives for the Settlement Class;

(9)    Preliminarily appointing and approving Atticus Administration ("Atticus") as the Settlement Administrator for the Settlement Class; and

(10)    Authorizing the Settlement Administrator to mail the approved Class Notice to the Settlement Class as set forth in the Settlement Agreement.

Plaintiffs bring this Motion pursuant to Federal Rules of Civil Procedure 23(e). The Motion is based on this notice, the following Memorandum of Points and Authorities, the Declaration Hallie Von Rock, the Declaration of Jonathan Wilson, and all other records, pleadings, and papers on file in the consolidated action and such other evidence or argument as may be presented to the Court at the hearing on this Motion. Plaintiffs also submit a Proposed Order Granting Preliminary Approval of Class Action Settlement with their moving papers.

Date: June 6, 2024                    Respectfully submitted,

                                      */s/ Hallie Von Rock*

                                      _____
                                      Hallie Von Rock
                                      AIMAN-SMITH & MARCY PC
                                      Attorneys for Plaintiffs

## I.     INTRODUCTION

Plaintiffs Serena Naro and Trish Gonzales (collectively "Plaintiffs"), having reached a class-wide settlement with Defendants Walgreen Co. and Walgreen Pharmacy Services Midwest, LLC ("Walgreens" or "Defendants,"), seek preliminary approval of the Settlement. After almost two years of litigation, including formal discovery, a motion to dismiss and amendment to the complaint, informal settlement discovery, detailed expert calculations, and extensive arm's-length negotiations between counsel, the Parties have reached a global settlement of the Action, memorialized in the proposed Class Action and Private Attorneys General Act Settlement Agreement and Release ("Settlement").[1]

Plaintiffs brought this class and Private Attorneys General Act action on behalf of current and former non-exempt workers employed by Defendants in their retail stores and/or pharmacies in California (the "Class Members"). Plaintiffs contend that Defendants violated California wage and hour laws by requiring Class Members to wear and purchase uniforms and allege that Defendants failed to compensate Class Members for such uniforms, which resulted in violation of California Labor Code section 2802.

The Settlement resolves the class claims for approximately 12,553 Class Members for a total non-reversionary settlement of $950,000. With this Settlement, the Parties are resolving wage and hour claims unlikely to have been prosecuted as individual actions. The Settlement is fair, reasonable, and adequate in all respects, and Plaintiffs respectfully request that the Court grant the requested approval.

## II.     FACTUAL BACKGROUND

Plaintiffs and Class Members are those individuals who, according to Defendants' third-party vendor records, purchased clothing at their own expense from Defendants' third-party vendors during the Class Period, which runs from May 31, 2018 through preliminary approval. HVR Dec. ¶ 3, Settlement Agreement ¶ 10.c. The Settlement Class is comprised of

---

[1] The Settlement is attached as **Exhibit 1** to the accompanying Declaration of Hallie Von Rock ("HVR Dec.") in Support of Plaintiffs' Motion for Preliminary Approval of Class and PAGA Representative Action Settlement.

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA REPRESENTATIVE ACTION SETTLEMENT**
*Naro, et al. v. Walgreen Co., et al.*

approximately 12,553 individuals. HVR Dec. ¶ 4; Declaration of Jonathan Wilson ("Wilson Dec.") ¶ 8.

Plaintiffs allege that Class Members experienced wage and hour violations in their work for Defendants. HVR Dec. ¶ 5. In particular, Plaintiffs allege that during the Class Period, Defendants required Class Members to report to work wearing uniform clothing items, which are in a specified style and color and/or which bear the Walgreens logo. *Id*. Plaintiffs alleged that while Defendants provided Class Members with an initial set of Walgreens logo clothing items at the start of their employment, Defendants neither provided Class Members with a sufficient number of replacement items after the initial items were rendered unusable by normal wear and tear, nor did Defendants reimburse Class Members for required replacement purchases. Plaintiffs who wished to wear a jacket or other layers for warmth were also required to buy and wear Walgreens-branded clothing items. After this Action was filed, Defendants changed their dress code policy, in September 2022, to no longer require that Class Members wear Walgreens logo tops, jackets, or scrubs. *Id*., ¶ 6.

As a result of Defendants' dress code policies, Plaintiffs' operative First Amended Complaint alleged causes of action for failure to reimburse necessary business expenses (Cal. Lab. Code § 2802); Unfair Competition (Cal. Bus. & Profs. Code § 17200, et seq.); and Private Attorneys General Act (Cal. Lab. Code § 2698, et seq.).

Defendants have at all times denied, and continue to deny, all of these allegations, and deny any and all liability for Plaintiffs' claims. They further deny that Plaintiffs' allegations are appropriate for class and/or representative treatment for any purpose other than for settlement purposes.

## III.  PROCEDURAL HISTORY

### A.  Plaintiffs' Claims

On March 16, 2022, Plaintiffs Serena Naro and Trish Gonzales sent a letter to the California Labor and Workforce Development Agency ("LWDA") and to Defendants giving notice of their intent to pursue a representative action pursuant to the California Labor Code

Private Attorneys General Act of 2004, codified at Labor Code § 2698, et seq. ("PAGA"), on behalf of themselves and the State of California as well as on behalf of a proposed group of allegedly aggrieved employees. In the letter, Plaintiffs claimed Defendants violated the Industrial Welfare Commission Wage Order and California Labor Code sections 204/204b, 221, 223, 226, 510, 1197, and 2802 and the related IWC Wage Order No. 7.

On May 31, 2022, Plaintiffs filed a class action Complaint in this Court that included causes of action for Failure to Indemnify Business Expenses (Labor Code §2802); Failure to Reimburse for Required Uniforms (IWC Wage Order 7, § 9 (A)); Failure to Pay Minimum Wage (Labor Code §§ 1194, 1194.2, 1197, IWC Wage Order No. 7, § 4(A)); Failure to Furnish Accurate Wage Statements (Labor Code § 226); Waiting Time Penalties (Labor Code §§ 201, 202, and 203); Unfair Business Practices (Business and Professions Code § 17200, et seq); and Penalties under the Private Attorneys General Act ("PAGA") (Labor Code § 2698, et seq). (ECF 1).

On July 5, 2022, Defendants filed a Motion to Dismiss Plaintiffs' Complaint. (ECF 8). On July 19, 2022, Plaintiffs filed their Opposition to the Motion to Dismiss. (ECF 18) On February 9, 2023, the Court granted Defendants' Motion to Dismiss Plaintiffs' wage claims, specifically the claims for the Failure to Pay Minimum Wage (Labor Code §§ 1194, 1194.,2, 1197, IWC Wage Order No. 7, § 4(A)); Failure to Furnish Accurate Wage Statements (Labor Code § 226); and Waiting Time Penalties (Labor Code §§ 201, 202, and 203). (ECF 32).

On February 23, 2023, Plaintiffs filed the operative First Amended Complaint for Failure to Indemnify Business Expenses (Labor Code §2802); Unfair Business Practices (Business and Professions Code § 17200, et seq); and Penalties under the Private Attorneys General Act ("PAGA") (Labor Code § 2698, et seq). (ECF 33).

On March 16, 2023, Defendants filed their Answer to First Amended Complaint. (ECF 38).

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA REPRESENTATIVE ACTION SETTLEMENT**
*Naro, et al. v. Walgreen Co., et al.*

B.    Discovery

The Parties engaged in formal written discovery, including Plaintiff serving two sets of special interrogatories and requests for production of documents, and Defendant serving interrogatories and requests for production of documents on both plaintiffs. The depositions of both Plaintiffs were taken as well as the deposition of one of Plaintiff's former supervisors who worked for Defendants. HVR Dec. ¶ 7.

Defendants produced their policies related to their dress code during the Class Period. *Id.* ¶ 8. Defendants also produced documents and data related to vouchers that were distributed to store managers for replacing Walgreen logo shirts and scrubs for Class Members.

Plaintiffs served subpoenas on third-party vendors of Defendants, which produced records showing all current and former non-exempt employees of Defendants working in Defendants' retail stores and/or pharmacies within California who purchased clothing items at their own expense from one of Walgreens' third-party clothing vendors during the Class and PAGA periods. *Id.* ¶ 9.

Additionally, Defendants engaged the expert Resolution Economics LLC, to calculate the purchases identified in the data provided by the third-party vendors of Defendants and to perform an exposure analysis. The Plaintiffs reviewed the detailed expert analysis performed and the parties agreed that the data was an accurate calculation of damages to form the basis of the Parties' settlement negotiations. *Id.* ¶ 10. The Declaration of Jonathan Wilson is being submitted with this motion describing the calculations conducted.

Plaintiffs and their counsel have conducted sufficient discovery and analysis to evaluate the strengths and weaknesses of their respective claims and Defendants' defenses and to recommend this Settlement to the Class Members and the Court. HVR Dec., ¶ 11.

C.    Settlement Negotiations

The Parties initially agreed to mediate with Michael Dickstein on March 28, 2024. HVR Dec., ¶ 12. Prior to the mediation, the parties participated in a conference call with Mr.

Dickstein on January 17, 2024, which included discussions of data to be produced for settlement negotiations. *Id*. Following this call, Defendants produced detailed damages data, and counsel for the parties met and conferred regarding the extent of the damages at issue. *Id*. The parties were largely in agreement regarding the potential exposure in the case and believed that it was possible to resolve the case without a mediator. *Id*.

Thereafter, the parties went back and forth for three months with their respective positions, including Defendants' defenses and Plaintiffs' replies thereto. Several issues arose during the negotiations, including but not limited to Defendants' contention that two prior settlements that released Labor Code section 2802 claims limited the Class Period and that a pending class action settlement included a release for Labor Code section 2802 claims that potentially overlapped with Plaintiffs' claims, here. *Id*., ¶ 13. Additionally, the data produced showed that a significant number of uniform items ordered during the Class Period were paid for with vouchers supplied by Walgreens and, thus, were not expenses borne by the Class Members. *Id*., ¶ 14. At the same time, the data confirmed that Class Members did use their own money to purchase over $435,000 in required Walgreens logo clothing items during the Class Period. *Id*.

Given the risks that both sides faced, after multiple offers and counteroffers were exchanged between February and March, the parties agreed to settle this Action for $950,000 on March 28, 2024. *Id*., ¶ 15. A Memorandum of Understanding was fully executed on April 8, 2024. *Id*.

After the agreement to settle, counsel for the Parties extensively met and conferred over the detailed terms of the settlement for purposes of executing a long-form settlement agreement and worked to finalize the Settlement Agreement and corresponding notice documents, subject to the Court's approval. HVR Dec., ¶ 16. The Settlement Agreement was fully executed on May 8, 2024. *Id.*

The parties informed the Court in a Joint Case Management Statement filed on April 8, 2024, that the case had settled. (ECF 58). The Court entered a scheduling order on April 9,

2024, ordering a Motion for Preliminary Approval of Class Settlement to be filed by June 7, 2024. (ECF 59).

## IV.    ARGUMENT

### A.    The Court Should Grant Preliminary Approval of the Settlement

Rule 23(e) provides that any compromise of a class action must receive court approval. The court has broad discretion to grant approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998). In deciding whether a settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *In re Heritage Bond Litigation*, 2005 WL 1594403 (C.D. Cal. 2005); *see also, Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (The Ninth Circuit maintains a "strong judicial policy" that favors settlement of class actions.). Rule 23 requires that all class action settlements satisfy two primary prerequisites before a court may grant certification for purposes of preliminary approval: (1) that the settlement class meets the requirements for class certification if it has not yet been certified; and (2) that the settlement is fair, reasonable, and adequate. Fed.R.Civ.P. 23(a), (e)(2); *Hanlon*, 150 F.3d at 1020. As discussed below, this class action settlement satisfies the requirements of Rule 23(a) and (b), and it is fair, reasonable, and adequate in accordance with Rule 23(e)(2). HVR Dec., ¶ 17. Accordingly, the Court should preliminarily approve the Settlement.

### B.    The Court Should Certify the Settlement Class[2]

A class may be certified under Rule 23 if (1) the class is so numerous that joinder of all members individually is "impracticable"; (2) questions of law or fact are common to the class; (3) the claims or defenses of the class representative are typical of the claims or

---

[2] Plaintiffs acknowledge that, in the event that the Settlement is not approved by the Court, class certification would be contested by Defendants, and Defendants fully reserve and do not waive any arguments and challenges regarding the propriety of class action certification.

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA REPRESENTATIVE ACTION SETTLEMENT**
*Naro, et al. v. Walgreen Co., et al.*

defenses of the class; and (4) the person representing the class is able to fairly and adequately protect the interests of all members of the class. Fed.R.Civ.P. 23(a). Furthermore, Rule 23(b)(3) provides that a class action seeking monetary relief may only be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). Applying this standard, numerous cases similar to this case have certified classes of employees who have suffered wage and hour violations under California wage and hour laws.[3]  Likewise, Plaintiffs contend that the Settlement Class meets all of these requirements.

### 1.    The Class Members are numerous and ascertainable.

The numerosity prerequisite demands that a class be large enough that joinder of all members would be impracticable. Fed.R.Civ.P. 23(a)(1). Courts routinely find numerosity satisfied with classes of at least forty members. *See, e.g., Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006). The approximately 12,553 Class Members render the class so large as to make joinder impracticable. HVR Dec., ¶ 18. The Class Members are readily identifiable from Defendants' payroll records and third-party vendor data of purchases made during the Class Period. *Id.*

### 2.    Plaintiffs' claims raise common issues of fact or law.

The commonality requirement of Rule 23(a)(2) "is met if there is at least one common question or law or fact." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 467 (E.D. Pa. 2000). Plaintiffs "need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013). "[E]ven a single common question" can satisfy the commonality

---

[3] *See, e.g., Brown, et al. v. Abercrombie & Fitch Co., et al.,* No. 2:14-cv-01242-JGB-VBK (N.D. Cal. July 16, 2015), *ECF 108 (certifying Rule 23 class in a case asserting uniform expense reimbursement violations); *Nucci, et al. v. Rite Aid Corporation*, No. 5:19-cv-01434-LHK (N.D. Cal. June 14, 2020) *ECF 69 (certifying Rule 23 class in a case asserting uniform expense reimbursement violations).

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA REPRESENTATIVE ACTION SETTLEMENT**
***Naro, et al. v. Walgreen Co., et al.***

1    requirement of Rule 23(a)(2). *Id*.

2    Plaintiffs contend that common questions of law and fact predominate here. The wage

3    and hour violations at issue are borne of Defendants' standardized policies, practices, and

4    procedures regarding their dress code policy during the Class Period and failure to reimburse

5    for personal purchases of clothing from Walgreens' third-party clothing vendors, creating

6    pervasive issues of fact and law that are amenable to resolution on a class-wide basis. HVR

7    Dec., ¶ 19. Because these questions can be resolved at the same juncture, Plaintiffs contend

8    the commonality requirement is satisfied for the Class. *Id*.

9           3.    *Plaintiffs' claims are typical of the claims of the Class.*

10    "Rule 23(a)(3) requires that the claims of the named parties be typical of the claims

11    of the members of the class." *Fry*, 198 F.R.D. at 468. "[A] representative's claims are

12    'typical' if they are reasonably coextensive with those of absent class members; they need

13    not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here, Plaintiffs contend that their

14    claims are typical of those of all other Class Members in that they purchased clothing from

15    Walgreens' third-party vendors without reimbursement. HVR Dec., ¶ 20. Thus, Plaintiffs

16    contend that the typicality requirement is also satisfied. *Id*.

17           4.    *Plaintiffs and Class Counsel will adequately represent the*
            *Class.*

18

19    To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiffs must

20    show "(1) that the putative named plaintiff has the ability and the incentive to represent the

21    claims of the class vigorously; (2) that he or she has obtained adequate counsel, and (3) that

22    there is no conflict between the individual's claims and those asserted on behalf of the

23    class." *Fry*, 198 F.R.D. at 469. Plaintiffs' claims are in line with the claims of the Class

24    Members, and Plaintiffs' claims are not antagonistic to the claims of Class Members. HVR

25    Dec., ¶ 21. Plaintiffs have prosecuted this case with the interests of the Class Members in

26    mind. *Id*. Moreover, Class Counsel has extensive experience in class action and

27    employment litigation, including wage and hour class actions, and do not have any conflict

28    with the Class. *Id*.

5.    *The Rule 23(b)(3) requirements for class certification are also met.*

Under Rule 23(b)(3), Plaintiffs must demonstrate that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." "The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wang,* 737 F.3d at 545.

Here, Plaintiffs contend the common questions raised in this action predominate over any individualized questions concerning the Class Members. HVR Dec., ¶ 22. The Class is entirely cohesive because resolution of Plaintiffs' claims hinge on the uniform policies and practices of Defendants, rather than the treatment the Class Members experienced on an individual level. *Id.* Namely, the predominate questions relate to whether Class Members are entitled to be compensated for the personal purchases made of clothing to comply with Walgreens' dress code policy. As a result, Plaintiffs contend that the resolution of these alleged class claims would be achieved through the use of common forms of proof, such as Defendants' policies, and would not require inquiries specific to individual Class Members. *Id.*

Further, Plaintiffs contend that the class action mechanism is a superior method of adjudication compared to a multitude of individual suits. *Id.*, ¶ 23. To determine whether the class approach is superior, courts are to consider: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed.R.Civ.P. 23(b)(3)(A)-(D).

Here, the Class Members do not have a strong interest in controlling their individual claims. HVR Dec., ¶ 23. The action involves thousands of workers with very similar, but

**9**

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA REPRESENTATIVE ACTION SETTLEMENT**
*Naro, et al. v. Walgreen Co., et al.*

1    relatively small, claims for monetary injury. *Id*. If the Class Members proceeded on their

2    claims as individuals, their many individual suits would require duplicative discovery and

3    duplicative litigation, and each Class Member would have to personally participate in the

4    litigation effort to an extent that would never be required in a class proceeding. *Id.* Thus,

5    Plaintiffs contend that the class action mechanism would efficiently resolve numerous

6    substantially identical claims at the same time while avoiding a waste of judicial resources

7    and eliminating the possibility of conflicting decisions from repetitious litigation and

8    arbitrations. *Id.* Thus, the issues raised by the present case are much better handled

9    collectively by way of a settlement. *Id.*

10        C.    The Terms of the Settlement Are Fair, Reasonable, and Adequate.

11        In evaluating the fairness of a proposed settlement, courts compare the settlement

12   amount with the estimated maximum damages recoverable in a successful litigation. *In re*

13   *Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 459 (9th Cir.2000). Courts routinely approve

14   settlements that provide a fraction of the maximum potential recovery. *See, e.g., Officers for*

15   *Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 623 (9th Cir. 1982); *Viceral v. Mistras Grp.,*

16   *Inc.*, Case No. 15-cv-2198-EMC, 2016 WL 5907869, at *7 (N.D. Cal. Oct. 11, 2016)

17   (approving wage and hour settlement which represented 8.1% of the total verdict value).  A

18   review of the Settlement Agreement reveals the fairness, reasonableness, and adequacy of its

19   terms. HVR Dec., ¶ 24. The Gross Settlement Common Fund of $950,000 represents 100%

20   of the unreimbursed business expenses plus interest ($514,809)[4], plus an additional

21   $435,191, representing 26% of the approximately $1,655,900 in maximum PAGA penalties.

22   *Id.*; Wilson Dec., ¶ 11, Table 3.

23        Again, these figures are based on Plaintiffs' assessment of a best-case-scenario. HVR

24   Dec., ¶ 25. To obtain such a result at trial, Plaintiffs would have to prove that Walgreens did

25   not provide sufficient replacement shirts and scrubs to each Class Member and that Class

26

27   ─────────────────────

28   [4] This amount excludes voluntary purchases of clothing items not required by Walgreens' dress code policy, such as Red Nose Day and holiday t-shirts.

Members purchased the uniform clothing items as a condition of work, rather than their own convenience to have multiple uniform items to avoid laundering their items or other personal reasons. *Id*. These issues would of course be disputed and hotly contested. *Id.*

The final settlement amount takes into account the substantial risks inherent in any class action wage and hour case, as well as the hurdles of achieving and maintaining class action status, and the specific defenses asserted by Defendants, including that Walgreens provided a sufficient number of uniform items to Class Members. *Id., ¶* 26; *see Officers for Justice*, 688 F.2d at 623. By obtaining 100% of the unreimbursed clothing purchases for dress-code required items plus over 26% of potential PAGA penalties, which were subject to the Court's reduction from the maximum PAGA penalties, the settlement is fair, reasonable, and adequate. HVR Dec., ¶ 26.

## V. THE PROPOSED SETTLEMENT MEETS THE NORTHERN DISTRICT OF CALIFORNIA'S PROCEDURAL GUIDELINES FOR CLASS ACTION SETTLEMENTS

As outlined herein, the proposed settlement meets each of the criteria outlined in the Northern District of California's Procedural Guidelines for Class Action Settlements. Pursuant to this Court's Standing Order for All Civil Cases Before District Judge Jon S. Tigar, each of the respective guidelines are addressed in the order the guidelines are presented on the Northern District of California's website.

### A. Information About the Settlement

#### 1. Settlement Class

In the operative First Amended Complaint, the Class is defined as:

> All non-exempt employees of Walgreens working in Walgreens' retail stores and/or pharmacies within California at any time during the period beginning four years prior to the date this action is filed, and continuing through to entry of judgment in this action.

The Settlement Class to be certified for settlement purposes only under Federal Rule of Civil Procedure 23, is defined as:

All current and former non-exempt employees of Defendants working in Defendants' retail stores and/or pharmacies within California who purchased clothing items at their own expense from one of Walgreens' third-party clothing vendors during the Class Period, which runs from May 31, 2018 through the date of preliminary approval.

Settlement Agreement, ¶¶ 10.b, c.

The difference in the definition for the Settlement Class is appropriate because it includes only those non-exempt employees who actually made purchases during the Class Period and were alleged to be owed reimbursed business expenses. HVR Dec., ¶ 27. An employee who did not spend personal funds on clothing purchases did not suffer any injury and would, therefore, not be entitled to any expense reimbursements. *Id.*

### 2. Released Claims

There are no differences between the claims to be released and the claims in the operative complaint. The scope of the release is as follows.

**Release by Class Members**: Upon the Court's final approval of the Settlement Agreement, and except as to such rights or claims as may be created by the Settlement Agreement, the Class Representatives and the Class Members (other than those who submit timely and valid exclusion forms) release and discharge the Defendants and each of their respective former and present parents, subsidiaries, holding companies and affiliated corporations and entities, and each of their respective former and present officers, directors, owners, managers, employees, partners, shareholders, members, and agents, and any other predecessors, successors, assigns or legal representatives (collectively "the Released Parties"), from any and all claims for reimbursement of business expenses (Labor Code Section 2802) and unfair business practices (Bus. & Prof. Code sections 17200 et seq.), arising from the facts as alleged in the First Amended Complaint from four years preceding the filing of Plaintiff's original complaint up to the date of preliminary approval (i.e., from May 31, 2018) (collectively, "Class Members' Released Claims").

**Release by Aggrieved Employees**: Upon the Court's final approval of the Settlement Agreement, and except as to such rights or claims as may be created by the Settlement Agreement, the Aggrieved Employees shall be bound by the release as to any Released PAGA claims that arise during the PAGA Period, pursuant to Labor Code section 2698, et seq., from any and all claims for reimbursement of business expenses (Labor Code Section

2802) arising from the facts as alleged in the First Amended Complaint and Plaintiffs' PAGA Notice to the LWDA from one year preceding the filing of Plaintiffs' PAGA Notice (i.e., from March 16, 2021) (collectively, "Aggrieved Employees' Released Claims").

**Release by Plaintiffs on Behalf of the LWDA (and State of California):** In their capacity as private attorneys general "aggrieved employees" acting on behalf of themselves and as proxies or agents of the LWDA and State of California, Plaintiffs agree to release Defendants and the Released Parties, from any and all PAGA Claims asserted in Plaintiffs' PAGA Notice to the LWDA against the Released Parties during the PAGA Period. Upon approval of this Agreement, Plaintiffs, the LWDA, the State of California, and any other individual or entity acting on behalf of or purporting to act on behalf of the LWDA and/or the State shall be barred from asserting any of the Released PAGA Claims in any future litigation, arbitration, or other legal forum. Any party to this Agreement may use the Agreement to assert that this Agreement and the Judgment to be entered by the Court following approval of this Agreement bars or limits any pending or later-filed action asserting any of the Released PAGA Claims against any of the Released Parties. The provisions of this paragraph apply regardless of whether Plaintiffs and/or the Aggrieved Employees cash their Individual PAGA Payment checks.

**Release by Named Plaintiffs:** In consideration for the service payments being paid to Plaintiffs, Plaintiffs, upon the Court's final approval of the Settlement Agreement, hereby fully and finally release and discharge the Released Parties from all known and unknown claims they have or may have against the Released Parties, of every nature and description whatsoever, up to the date of the Court's final approval of the Settlement Agreement, in addition to the Class Members'/Aggrieved Employees' Released Claims described in the paragraphs 15 and 16. This general release of claims includes any and all known or unknown contract, tort, statutory, common law, constitutional, discrimination, public policy, retaliation, wrongful discharge and other claims of any type whatsoever, to the fullest extent such claims are releasable by law, arising out of Plaintiffs' employment with Defendants and the Released Parties (collectively "Named Plaintiffs' Released Claims"). As to the Named Plaintiffs' Released Claims, the Plaintiffs, understanding the significance of this waiver, waive all rights and benefits afforded by Section 1542 of the Civil Code.

*See,* Settlement Agreement, ¶¶ 14-17.

B. The Proposed Settlement Is a Reasonable Compromise of Claims.

Defendants have agreed to pay a non-reversionary Gross Settlement Amount of $950,000 to settle all aspects of the case. Settlement Agreement ¶ 23. The Net Settlement Amount is defined as the Gross Settlement Common Fund of Nine Hundred Fifty Thousand Dollars and Zero Cents ($950,000.00) less the following deductions:  The sum of Twenty Thousand Dollars and Zero Cents ($20,000.00) for the representative payment awards to Plaintiffs, with Ten Thousand Dollars and Zero Cents ($10,000.00) to be paid each to Serena Naro and Trish Gonzales, or such other amount as approved by the Court; the sum of attorneys' fees to Class Counsel, which shall not exceed Three Hundred Sixteen Thousand and Six Hundred Sixty-Six Dollars and Zero Cents ($316,666.00); the sum of costs of litigation to Class Counsel, which shall not exceed Twenty Thousand Dollars and Zero Cents ($20,000.00); Seventy Five Thousand Dollars and Zero Cents ($75,000.00), which is 75% of the One Hundred Thousand Dollars and Zero Cents ($100,000.00) earmarked for the release of Representative Plaintiffs' and each Aggrieved Employees' PAGA claims, and which will be paid to the California Labor and Workforce Development Agency; the administrative expenses approved by the Court pursuant to this Agreement, up to Forty Five Thousand Dollars and Zero Cents ($45,000.00) (*current bid is for $32,500). Settlement Agreement ¶ 12 (e).

The net settlement fund is comprised of two parts: (1) the "Net PAGA Settlement Amount" (i.e., the $25,000.00 earmarked for the release of Representative Plaintiffs' and each PAGA Aggrieved Employee's PAGA claims that is not payable to the California Labor and Workforce Development Agency); and (2) the "Net Class Settlement Amount" (i.e., the entire Net Settlement Amount less the Net PAGA Settlement Amount, which is approximately $473,334.00). Settlement Agreement ¶ 12.e.[5]

The Gross Settlement Amount is a negotiated amount that resulted from substantial

---

[5] If the settlement administration cost does not exceed $32,500, the Net Class Settlement Amount will raise to $485,834.

arms' length negotiations and significant investigation and analysis by both parties. HVR Dec., ¶ 28. The parties based their damages analysis and settlement negotiations on the expert analysis provided by Resolution Economics, LLC. *Id*. The data that formed the basis of the uniform clothing purchase calculations included Walgreen clothing item order information from third-party vendor HPI from September 29, 2017 to September 17, 2020; Walgreen clothing item order information from Microsoft Access Database from August 7, 2020 to May 7, 2021; Walgreen clothing item order information from third-party vendor High Performance Uniforms (HPU) from August 24, 2021 to March 20, 2023; payroll data from WPM's SAP system for all employees from May 31, 2018 to March 22, 2023; payroll deduction data from January 3, 2018 to July 12, 2023; and employee job history data for all California employees from 2018 through 2023. Wilson Dec., ¶ 4.

According to the data, 12,553 class members purchased a garment at their own expense during the class period. *Id.,* ¶ 8. In order to determine the amount paid for each line item in an order, the unit price was multiplied by the quantity and then added to the sales tax and shipping. *Id.,* ¶ 9. For the period of time with missing order data, May 8, 2021 – October 16, 2021, the amount spent on personal orders was estimated separately. *Id.* According to the payroll deduction dataset, deductions for clothing items purchases from a third-party vendor by putative class member during the period were approximately $40,037. *Id.* The total extrapolated amount for credit card purchases is $5,615. *Id.* The total estimated personal amount spent on clothing items during the class period is $859,994. *Id.,* ¶ 10.

However, within the data were clothing items considered "voluntary purchases," such as Red Nose Day, diversity, and holiday t-shirts. *Id*., ¶ 11. These t-shirts are not considered a uniform or necessary business expense, but rather, Walgreen permitted employees to purchase and wear these t-shirts during specific periods during the year in place of the Walgreen logo polo shirts, if the employee preferred to do so. HVR Dec., ¶ 29. When excluding voluntary purchases from the analysis, there are 9,727 employees who personally paid for a clothing item order during the class period, which reduces the total estimated

personal amount spent on clothing items during the class period down to $435,000, and with interest totaled $514,809. Wilson Dec., ¶ 11.

As for PAGA penalties, when excluding voluntary purchases, there were 7,379 employees with a personal purchase order during the PAGA period. *Id.*, ¶ 11. Assuming a $100 penalty for the first pay period with a clothing purchase not reimbursed and $200 penalty for subsequent pay periods with personal purchases, the total for the PAGA reimbursement claim during the PAGA period is $1,655,900. Wilson Dec., ¶ 11, Table 3.

Thus, the maximum class and PAGA exposure was $2,170,709. HVR Dec., ¶ 30; Wilson Dec., ¶ 11, Table 3. Defendants took the position, however, that this exposure should be reduced to $1,654,350, based upon earlier settled actions that released Labor Code section 2802 claims during the Class Period (*President, et al. v. Walgreen Co.*, Santa Clara Superior Court Case No. 20CV368984, class action settlement Judgment entered on 10/19/23, and *Epstein v. Walgreen Pharmacy Services Midwest, LLC, et al.*, Central District Case No. 5:19-cv-01323-DOC-ADS, class action settlement Judgment entered 4/15/21). HVR Dec., ¶ 30.

The Gross Settlement Amount of $950,000 represents more than 43% of the total exposure, and 57% of the exposure if excluding previous settlements. *Id.*, ¶ 31. These total exposures include the maximum PAGA penalties and Plaintiffs are reticent that the court has discretion to reduce PAGA penalties. For example, in *Carrington v. Starbucks Corp.,* 30 Cal.App.5th 504, 517, 529 (2018), the trial Court reduced the PAGA penalty amount to only $150,000 ($5 per violation).

Further, Defendants argued that the initial Walgreen logo shirts and scrubs provided at hiring, along with annual vouchers they provided for replacements, were sufficient to comply with Defendants' dress code policy. *Id.*, ¶ 32. Defendants argued that any additional clothing purchases were not required, but were done so for class members' personal desire to have multiple clothing options to wear. *Id.* If the Court had sided with Defendants on their defenses, Class Members would not receive any damages or penalties. *Id.*

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA REPRESENTATIVE ACTION SETTLEMENT**
*Naro, et al. v. Walgreen Co., et al.*

The Settlement will result in immediate and certain payment to Class Members of meaningful amounts. *Id*., ¶ 33. Class Members spent an average of $61.53 on required clothing items. Wilson Dec. ¶ 9. With the Net Class Settlement Amount of $473,334, the average class recovery is $37.70 (or $38.70 if Settlement Administration Costs do not raise). Thus, the average recovery is over 61% of the average purchase amount, which is an excellent compromise without the prolonged delays of class certification and trial. HVR Dec., ¶ 33.

Additionally, there are approximately 7,379 Aggrieved Employees who made purchases during the PAGA period. Wilson Dec. ¶ 11. The Net PAGA Settlement Amount of $25,000 will be distributed to the Aggrieved Employees, which calculates to an average of $3.39 per Aggrieved Employee in PAGA penalties. HVR Dec., ¶ 34

Thus, the settlement amount provides significant compensation to the Class Members and Aggrieved Employees in the face of expanding and uncertain litigation. HVR Dec. ¶ 35.

In light of all of the risks, the settlement amount is fair, reasonable, and adequate. *Id*. Such a result will benefit the Parties and the court system. *Id*., ¶ 36. It will bring finality to the Action and will foreclose the inevitability of expanding litigation. *Id.*

C.    Cases Affected by the Settlement.

There are no pending cases the parties are aware of that would be affected by this settlement. *Id*., ¶ 37. There is a related pending class action in the process of settling that includes a class of pharmacy techs with a Labor Code Section 2802 release (*Gamarro v. Walgreen Pharmacy Services Midwest*, Riverside Superior Court Case No. CVRI22033). However, pharmacy tech Class Members will be permitted to participate in both cases. *Id.*

D.    The Proposed Allocation Plan.

The Net Settlement Amount is comprised of two parts: (1) the "Net PAGA Settlement Amount" (i.e., the $25,000.00 earmarked for the release of Representative Plaintiffs' and each PAGA Aggrieved Employee's PAGA claims that is not payable to the California Labor and Workforce Development Agency); and (2) the "Net Class Settlement Amount" (i.e., the

entire Net Settlement Amount less the Net PAGA Settlement Amount, which is approximately $473,334.00). Settlement Agreement, ¶ 12.f; HVR Dec. ¶ 38.

The distribution formula is based upon records produced in this litigation by Defendants' vendors for those Class Members who purchased clothing at their own expense from Defendants' third-party vendors during the Class Period. Settlement Agreement, ¶ 13. The Net Settlement Fund will be divided by the clothing purchases to determine the Clothing Purchases Payout Rate. *Id.* The total amount allocated to each Class Member will be the total of his or her identified Clothing Purchases during the applicable Class and PAGA Periods multiplied by the Clothing Purchases Payout Rate. *Id.* This allocation is fair and reasonable because it takes the extent of the injury of each Class Member into account and bases their claim amount on the amount actually expended on uniform clothing items during the Class Period. HVR Dec. ¶ 39.

Twenty-five percent (25%) of the $100,000 PAGA allocation will be distributed to the Aggrieved Employees on a pro-rata basis based upon the number of pay periods that the Aggrieved Employee made purchases during the PAGA Period. The Labor and Workforce Development Agency shall receive a check for 75% of the PAGA settlement amount. Settlement Agreement, ¶ 13.

The payments to the Class Members and Aggrieved Employees shall be non-taxable, and a form 1099 will be issued by the administrator for such payments. *Id.*

The Class Members, who do not opt-out of the settlement, and all Aggrieved Employees shall receive a direct mail check of the amount of their claim and will have 180 days to cash their checks. *Id.* If any funds remain after the expiration date of the distribution, any residual funds will be distributed to Legal Aid at Work as a *cy pres* beneficiary. *Id.*

E.    Settlement Administration.

Plaintiffs sought and received bids from four respected Claims Administrators, including Simpluris, Rust, JND Legal Administration, and Atticus Administration. HVR Dec. at ¶ 40. The terms of the quotes included sending a postcard notice to approximately

12,500 Class Members, establishing a website with the full notice and other important documents, maintaining a toll-free number, tax accounting, and sending direct mail checks to class members. *Id.* The administrator with the lowest bid was Atticus Administration ("Atticus"), with a quote of $37,200. *Id.* The parties agreed in the Settlement Agreement to use Atticus. Settlement Agreement, ¶ 10 (j).

Over the last two years, Plaintiffs' counsel has successfully worked with Atticus for settlement administration of two PAGA settlements and three class action settlements. HVR Dec., ¶ 41. A copy of Atticus' Data Security Information & Privacy Policy is attached as Exhibit 3 to the HVR Dec. Atticus maintains insurance with AAA rated insurance carriers for professional liability and cybersecurity. HVR Dec., ¶ 42. It is Atticus' policy to warrant the work performed on all errors and omissions, on all projects, including distribution of funds to class members, without additional charges to their clients. *Id.*

F. Notice and Settlement Administration.

Atticus will distribute the Post Card Notices of Settlement (attached as Ex. B to the Settlement Agreement) via U.S. mail and email (where email addresses are available), re-mail any Notice Packets returned as non-deliverable but with forwarding addresses, and re-mail the Notice Packet to any new address obtained by way of skip-trace. Settlement Agreement, ¶ 26. Atticus will also receive and process requests for exclusion forms, calculate the settlement payments, and prepare and issue all disbursements to participating Class Members and Aggrieved Employees, Service Awards to Plaintiffs, payment to the LWDA payment, payment to Class Counsel for fees and costs, and payment to itself for fees in administering the settlement. *Id.*

Atticus will also create a website for the Settlement, which will allow Class Members to view the Class Notice (attached as Ex. A to the Settlement Agreement), the Settlement Agreement, and all papers filed by Class Counsel to obtain preliminary and final approval of the Settlement Agreement. *Id.* The Settlement Administrator will also establish a toll-free call center for telephone inquiries from Class Members. *Id.*

1

2

### G. Requests for Exclusion from the Settlement.

The Settlement Administrator shall administer the receipt of any and all requests for exclusion from the Action. Any Class Member who submits a valid and timely request for exclusion shall not be bound by the terms of the Settlement Agreement. Any Class Member who desires to be excluded from the Action must send a written request for exclusion to the Settlement Administrator with a postmark dated no later than 30 calendar days prior to the Final Hearing. In such request, the Class Member must set forth his or her full name, address, telephone number and email address (if available), along with a statement that he or she wishes to be excluded. The Settlement Administrator shall provide a list of the names and addresses of each Class Member who submitted a valid exclusion to the Parties no later than 21 court days prior to the Final Hearing. Class Members who request to be excluded from the Settlement shall nevertheless be bound by the release of claims under PAGA. Settlement Agreement ¶ 32.

### H. Objections to the Settlement.

Any Class Member who intends to object to the fairness of this settlement must (1) file a written objection with the Court no later than 30 calendar days prior to the Final Hearing and (2) mail or personally deliver a copy of the written objection to Class Counsel and Defendants' Counsel on the same day as the objection is sent to the Court. The Court will deem an objection filed on the day it is received by the Court, not necessarily when the objection is postmarked. In the written objection, the Class Member must state: his or her full name, address, telephone number, and email address (if available); the reasons for his or her objection; and whether he or she intends to appear at the Final Hearing on his or her own behalf or through counsel. Further, the Class Member must attach to his or her objection all evidence supporting the objection. Any Class Member who does not file a valid and timely objection to the settlement shall be barred from seeking review of the settlement by appeal or otherwise. Settlement Agreement ¶ 33.

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA REPRESENTATIVE ACTION SETTLEMENT**
*Naro, et al. v. Walgreen Co., et al.*

1    I. Attorney's Fees and Costs Are Reasonable.

2         In their fee motion to be submitted with the final approval papers, Class Counsel shall

3    seek an award of attorneys' fees not to exceed Three Hundred Sixteen Thousand Six

4    Hundred Sixty-Six Dollars and Zero Cents ($316,666.00) (33.33 % of the Gross Settlement

5    Common Fund). This amount will cover all work performed to date and all work to be

6    performed in connection with the approval by the Court of the Settlement Agreement and the

7    final conclusion of this Action. Settlement Agreement ¶ 18; HVR Dec., ¶ 43.

8         The percentage fee is also reasonable on a lodestar basis. Based on Plaintiffs' current

9    lodestar of $375,135, the fees being sought of $316,666 are less than the lodestar. Plaintiffs

10   will be spending additional time on the case through the settlement administration process

11   and seeking final approval, which will further increase their lodestar. HVR Dec., ¶ 44.

12        When a district court exercises diversity jurisdiction over a case consisting of

13   exclusively California claims, as here, California substantive law applies to the calculation of

14   the attorney fee award. *See, Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478-1479

15   (9th Cir. 1995) (finding state law to be applicable in "in determining not only the right to

16   fees, but also the method of calculating the fees."); *see also, Rodriguez v. Disner*, 688 F.3d

17   645, 653 fn. 6 (9th Cir. 2012) ("If … we were exercising our diversity jurisdiction, state law

18   would control whether an attorney is entitled to fees and the method of calculating such

19   fees"); *Gonzalez v. Southern Wine & Spirits of Am., Inc.*, 555 Fed.Appx. 704, 704-705 (9th

20   Cir. 2014) (finding district court abused its discretion in applying federal law instead of

21   California substantive law to the calculation of attorneys' fees, holding that, because the

22   court exercised diversity jurisdiction, California substantive law should have been applied).

23        Here, Plaintiffs' claims arise exclusively from California law. Accordingly, the Court

24   should apply the method for calculating attorney's fees as set forth by California

25   jurisprudence. *See, e.g., Laffitte v. Robert Half International, Inc.,* 1 Cal.5th 480, 503-506

26   (2016) (percentage method with a lodestar crosscheck is appropriate in common fund cases).

27   Furthermore, use of the percentage method in common fund cases appears to be dominant in

28

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA REPRESENTATIVE ACTION SETTLEMENT**
*Naro, et al. v. Walgreen Co., et al.*

the Ninth Circuit. *See, e.g., Vizcaino*, 290 F.3d 1043, 1047; *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). The advantages of using the percentage method have been described thoroughly by other courts. *See, e.g., In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1374-77 (N.D. Cal. 1989).

In California, federal and state courts have customarily approved payments of attorney's fees amounting to one-third or more of the common fund in comparable wage and hour class actions. *See, e.g., Soto et al. v. O.C. Communications, Inc., et al.*, Case No. 3:17-cv-00251-VC, ECF 304 (N.D. Cal. Oct. 23, 2019) (approving attorneys' fees of one-third of the gross settlement in hybrid FLSA/Rule 23 settlement). Further, under the circumstances present here, upward adjustment from the Ninth Circuit "benchmark" of 25% is warranted not only by the application of California fee award jurisprudence, but by the circumstances of the case. Plaintiffs obtained the full amount of expense reimbursements owed to class members plus penalties in a prompt manner, which is an excellent result to get Class Members paid now rather than having to wait for years of protracted litigation.

Class Counsel shall also submit an application for the reimbursement of costs and expenses in an amount not to exceed Twenty Thousand Dollars and Zero Cents ($20,000.00). This amount will cover all costs and expenses incurred to date or to be incurred. This amount shall come from the Gross Settlement Common Fund. Settlement Agreement, ¶ 18.

The amount of fees and costs requested are clearly set forth in the Notice. Accordingly, Plaintiffs respectfully request the Court preliminarily approve the terms of the settlement, including the request for fees and costs. Any objections by Class Members to the request for fees and costs may be considered by the Court at final approval.

J. Service Awards to Representative Plaintiffs

Named plaintiffs in class action litigation are eligible for reasonable service awards. *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) ("Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation"); *Van Vranken v. Atl. Richfield*

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA REPRESENTATIVE ACTION SETTLEMENT**
*Naro, et al. v. Walgreen Co., et al.*

*Co.*, 901 F.Supp. 294, 300 (N.D. Cal. 1995) (named plaintiff received $50,000 for work in class action). From the Gross Settlement Comon Fund, each Representative Plaintiff will be paid Ten Thousand Dollars and Zero Cents ($10,000.00) as a service award for their time and efforts as Representative Plaintiffs. These service payment awards are in addition to their rights to payments provided in the Settlement for initiating and pursuing the Action, undertaking the risk of liability for attorneys' fees and expenses in the event they were unsuccessful in the prosecution of the Action, and granting the general release under the Settlement. Settlement Agreement, ¶ 16.

In agreeing to serve as Class Representatives, these individuals formally agreed to accept the responsibilities of representing the interests of all Class Members and Aggrieved Employees. HVR Dec. ¶ 45. Each Named Plaintiff participated fully in discovery, worked closely with Class Counsel, and had her deposition taken by Defendants. *Id*. Defendants do not oppose the requested payments to these representatives as reasonable service awards. *Id*.

K. *Cy Pres* Recipient.

The parties propose that any funds remaining in the Net Settlement Fund after the 180 day void date for checks be distributed *cy pres* to Legal Aid at Work, which is a nonprofit organization that provides legal services assisting low-income, working families and promotes better understanding of the conditions, policies, and institutions that affect the well-being of workers and their families and communities. HVR Dec. at ¶ 46.

L. Timeline.

Plaintiffs have submitted a proposed order setting forth the proposed schedule of events from here through final approval. HVR Dec., ¶ 47 and [Proposed] Order. Plaintiffs submit that the proposed schedule complies with Rule 23 and secures the benefits for Class Members in a timely fashion. Plaintiffs propose a final approval hearing date of November 21, 2024.

M. CAFA / PAGA Notice.

Within 10 days after the proposed settlement is filed in court (28 U.S.C. §1715(b)),

Defendants will provide notice upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement.  Plaintiffs are submitting this motion concurrently with filing on the LWDA.

N. Comparable Cases.

Plaintiffs provide two comparable cases. HVR Dec., ¶ 48. The case of *Ping v. See's Candy Shops, Inc., et al.*, County of Butte No. 20CV01023, involved claims similar to here in that Plaintiffs sought reimbursement for purchasing uniform clothing to comply with Defendant's dress code policy. The scope of release was more expansive than here as wage and hour violations for statutory penalties were alleged, and the release included failure to provide uniforms and/or reimbursement for uniform-related expenses; failure to pay minimum wages; failure to timely pay wages due at termination; and failure to furnish accurate itemized wage statements; including without limitation, claims under the California Labor Code sections 201, 202, 203, 204, 210, 218.5, 223, 226, 226.3, 558, 1194, 1194.2, 1197 et seq., 2802, Bus. & Prof. Code section 17200 et seq., and Labor Code section 2698.

|  | The See's Settlement | This Proposed Settlement |
|---|---|---|
| Total settlement fund | $1,350,000 | $950,000 |
| Total no. of class members | 6,851 | 12,555 |
| Total no. of class members who received notice and not returned as undeliverable | 6,737 | Unknown at this time |
| Method(s) of Notice | U.S. mail | U.S. mail and email |
| No. and percentage of Claim Forms submitted | Not applicable | Not applicable |
| Average recovery per class member | $42.96 | $37.70 / $38.70 |
| Amount of uncashed checks | 2,350 | Amount of uncashed checks is unknown at this time |
| Administrative Costs | $50,000 | Up to $45,000; current bid is $37,200 |
| Attorney's Fees and Costs | $380,000 in fees and $11,400 in costs | $316,666 in fees and up to $20,000 in costs |
| Total Exposure if Plaintiffs and the Class Prevailed | $18,341,598 | $2,170,709 |

The case of *Nucci v. Rite Aid*, *et al.*, N.D. Cal. No. 19-cv-01434-LHK, involved claims similar to here in that Plaintiffs sought reimbursement for purchasing uniform clothing to comply with Defendants' dress code policy. Plaintiffs' causes of action and scope of release were more expansive than here and included Failure to Indemnify Business Expenses (Labor Code §2802); Failure to Reimburse for Required Uniforms (IWC Wage Order 7, § 9 (A)); Unfair Business Practices (Business and Professions Code § 17200, et seq.); Injunction; Failure to Pay Minimum Wage (Labor Code §§ 1194, 1194.,2, 1197, IWC Wage Order No. 7, § 4(A); Failure to Furnish Accurate Wage Statements (Labor Code § 226); Waiting Time Penalties (Labor Code §§ 201, 202, and 203); and Penalties under the Private Attorneys General Act ("PAGA") (Labor Code § 2698, et seq.).

|  | The Rite Aid Settlement | This Proposed Settlement |
|---|---|---|
| Total settlement fund | $12,000,000 | $950,000 |
| Total no. of class members | 39,451 | 12,555 |
| Total no. of class members who received notice and not returned as undeliverable | 29,103 | Unknown at this time |
| Method(s) of Notice | U.S. mail and email | U.S. mail and email |
| No. and percentage of Claim Forms submitted | Not applicable | Not applicable |
| Average recovery per class member | $308.31 | $37.70 / $38.70 |
| Amount of uncashed checks | 6,225 | Amount of uncashed checks is unknown at this time |
| Administrative Costs | $75,000 | Up to $45,000; current bid is $37,200 |
| Attorney's Fees and Costs | $3,999,600 in fees and $300,940 in costs | $316,666 in fees and up to $20,000 in costs |
| Total Exposure if Plaintiffs and the Class Prevailed | $46,230,694 | $2,170,709 |

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA REPRESENTATIVE ACTION SETTLEMENT**
*Naro, et al. v. Walgreen Co., et al.*

1

## VI.   CONCLUSION

2      Based on the foregoing, Plaintiffs respectfully request that the Court grant preliminary

3  approval of the proposed settlement, enter the proposed preliminary approval order

4  submitted herewith, and set a final approval hearing date.

5  Date: June 6, 2024                          Respectfully submitted,

6                                              */s/ Hallie Von Rock*

7                                              _____

8                                              Hallie Von Rock
                                               AIMAN-SMITH & MARCY PC
9                                              Attorneys for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

_____
**26**
**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION AND PAGA REPRESENTATIVE ACTION SETTLEMENT**
***Naro, et al. v. Walgreen Co., et al.***

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court, Northern District of California, by using the Court's CM/ECF system on June 6, 2024. Service will be accomplished on all parties by the Court's CM/ECF system.


Dated: June 6, 2024

/s/ Hallie Von Rock
_____
Hallie Von Rock

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class and PAGA Action Settlement
*Naro, et al. v. Walgreen Co., et al.*                                                    Case No. 4:22-cv-03170-JST
Page 27