UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERENA NARO, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>WALGREEN CO, et al.,<br><br>　　　　　Defendants. | Case No. 22-cv-03170-JST<br><br>**ORDER DENYING WITHOUT PREJUDICE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: ECF No. 60 |

Before the Court is Plaintiffs' unopposed motion for preliminary approval of class action settlement. ECF No. 60. The Court will deny the motion without prejudice for the reasons discussed below.

First, the settlement agreement's release provisions place the Named Plaintiffs in conflict with the settlement class. The settlement class releases the claims asserted in the complaint. ECF No. 60 at 19–20. The Named Plaintiffs release those claims, but also agree to a general release, i.e., to "fully and finally release and discharge the Released Parties from all known and unknown claims they have or may have against the Released Parties, of every nature and description whatsoever, up to the date of the Court's final approval of the Settlement Agreement." ECF No. 60-1 ¶ 34(d). This general release is part of the consideration for the $10,000 incentive award Class Counsel have agreed to request for each named plaintiff. *Id.* ¶ 16. The Ninth Circuit, however, has disapproved of incentive payments awarded in exchange for general releases, because they "appear to be completely divorced from any benefit or service to the class." *Roes, 1– 2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1056 (9th Cir. 2019). "Moreover, the handsome amounts of those incentive payments, relative to the size of the cash payments that can be claimed by class members, raise serious red flags that the defendants may have tacitly bargained for the named

plaintiffs' support for the settlement by offering them significant additional cash awards." *Id.* at 1057. The Court will not approve a settlement containing this provision.

Second, the parties' proposed notice of settlement provides that settlement class members who wish to opt out or file objections to the settlement must do so within 30 days after notice is mailed to the class. ECF No. 60-1 at 13. This Court generally finds that "any period shorter than 60 days is too short a time to allow class members to properly respond." *Thomas v. Magnachip Semiconductor Inc.*, No. 14-CV-01160-JST, 2016 WL 1394278, at *8 (N.D. Cal. Apr. 7, 2016); *Terry v. Hoovestol, Inc.*, No. 16-CV-05183-JST, 2018 WL 6439167, at *6 (N.D. Cal. Dec. 7, 2018).

Third, the parties contemplate that Plaintiffs will file a motion for attorney's fees with the final approval papers, ECF No. 60 at 28, but do not provide an opportunity for class members to object to that motion. Ninth Circuit precedent requires that class members have an adequate "opportunity to object to the fee motion itself, not merely to the preliminary notice that such a motion will be filed." *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993–94 (9th Cir. 2010) (internal quotation omitted)). "Rule 23(h) does not require that class counsel's fee motion be filed before the deadline for class members to object to, or opt out of, the substantive settlement," however, so long as there is a separate opportunity for class members to object to the fee motion after it is filed. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 615 (9th Cir. 2018) (emphasis omitted). Accordingly, the parties should propose a deadline for the filing of a motion for attorney's fees, and either (1) a single objection/exclusion deadline for both the substantive settlement and the fee motion, after the fee motion has been filed; or (2) a second objection deadline for the fee motion.

For these reasons, Plaintiffs' motion for preliminary approval of class action settlement is denied, without prejudice to Plaintiffs' filing a revised motion correcting these deficiencies. The Court makes the following additional observations to assist the parties in that effort.

First, the Court notes that Plaintiffs' counsel anticipates seeking an award of attorney's fees up to one-third of the common fund established by the settlement, and that Plaintiffs will seek incentive awards of $10,000 each for Plaintiffs Serena Naro and Trish Gonzalez. ECF No. 60 at

21. The Court will not determine appropriate fee and incentive awards until after a motion has been filed. However, it reminds the parties that, "[f]or more than two decades, the Ninth Circuit has set the 'benchmark for an attorneys' fee award in a successful class action [at] twenty-five percent of the entire common fund.'" *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 519 (N.D. Cal. 2020) (alteration in original) (quoting *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997)), *aff'd*, 845 F. App'x 563 (9th Cir. 2021). Similarly, "[a]n incentive award of $5,000 is presumptively reasonable, and an award of $25,000 or even $10,000 is considered 'quite high.'" *Rollins v. Dignity Health*, No. 13-cv-01450-JST, 2022 WL 20184568, at *9 (N.D. Cal. July 15, 2022) (citing *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014)).[1] Plaintiffs should justify any deviation from the attorney's fee benchmark and presumptively reasonable incentive award when they apply for such awards. *See, e.g.*, *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) (noting that "the 25% benchmark can be adjusted upward or downward, depending on the circumstances"); *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *32 (N.D. Cal. Apr. 1, 2011) (discussing factors a court considers when evaluating requests for incentive awards), *supplemented*, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

Finally, the Court has considered, as it must, the value of the settlement compared to what Plaintiffs might have recovered if they had prevailed at trial. *See Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1123 (9th Cir. 2020) (noting that "the settlement's benefits must be considered by comparison to what the class actually gave up by settling"). In determining "whether the proposed settlement falls within the range of reasonableness, perhaps the most important factor to consider is 'plaintiffs' expected recovery balanced against the value of the settlement offer.'" *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (quoting *In re High-Tech Emp. Antitrust Litig.*, No. 11-cv-02509-LHK, 2014 WL 3917126, at *3 (N.D. Cal. Aug. 8, 2014)). Plaintiffs contend that the proposed settlement of $900,000 should be judged against potential recovery of

---

[1] At some point, the common law will have to reckon with inflation. $5,000 in February 2012, when the *Harris* decision was issued, had the same buying power as $6,931.41 has today. Bureau of Labor Stat., CPI Inflation Calculator, https://www.bls.gov/data/inflation_calculator.htm (measured as of December 2024). That gap will only grow over time.

3

unreimbursed business expenses plus interest in the amount of $514,809 and maximum PAGA penalties of $1,655,900.  ECF No. 60 at 17.  There are several problems with these figures.

First, the settlement class actually spent $859,994 on unreimbursed business clothing, which produces an estimated PAGA penalty for reimbursement claims of $2,812,000.  The parties arrive at the lower figures by excluding what they characterize as "voluntary" purchases of certain items of Walgreen clothing such as seasonal shirts, hats, and jackets, but the record is not sufficient to support the reduction.  For one thing, the parties' economist[2] concluded that "[t]he total estimated amount is likely higher than the actual amount spent on voluntary purchases."  ECF No. 60-2 at 7 n.10.  Thus, even if the voluntary nature of the purchases were adequately demonstrated in the record, the proposed discount would be excessive.  For another, there is nothing in the record to show that such purchases were actually voluntary.  Plaintiffs took no discovery on that issue, and there is no written testimony from class members regarding their reasons for making these purchases.  Without that evidence, it is just as likely that employees felt pressured into making the purchases as it is they were voluntary.  *See, e.g.*, *Brown v. Abercrombie & Fitch Co.*, No. 14-cv-1242 JGB (VBKX), 2015 WL 9690357, at *12 (C.D. Cal. July 16, 2015) (discussing "evidence of a common practice or informal policy of pressuring employees to purchase Abercrombie clothing").  Thus, the Court does not discount the $859,994 and $2,812,000 figures in evaluating the settlement.

Second, the parties' economist was charged with tallying clothing purchases from September 29, 2017 to March 20, 2023.  ECF No. 60-2 ¶ 4.  His analysis, however, excludes the period May 7, 2021 through October 16, 2021, because purchase data was not available for that period.  ECF No. 60-2 at 3 n.1.  To address this gap, the Court would fill in the missing dates by applying the average purchases per day over the rest of the study period, resulting in an increase of 8.1%.  That produces an unreimbursed clothing total of $929,654 and an estimated PAGA penalty of $3,039,772, for a total of $3,969,425.

Notwithstanding these adjustments, however, the Court is likely to conclude that the

---

[2] Defendants retained an economist to evaluate Plaintiffs' potential losses and the parties agreed to use his analysis jointly in their settlement discussions.  ECF No. 60-2 ¶ 3.

amount offered in settlement is reasonable. The $100,000 proposed to be allocated to PAGA penalties represents approximately 3.3% of the maximum PAGA liability, and courts in this circuit have regularly approved settlement amounts constituting single digit percentages of the PAGA penalty. *See, e.g., Merante v. Am. Inst. for Foreign Study, Inc.*, No. 21-CV-03234-EMC, 2022 WL 2918896, at *6 (N.D. Cal. July 25, 2022) (approving a PAGA settlement amount between .27% and 2% of the maximum PAGA liability); *Hamilton v. Juul Labs, Inc.*, No. 20-CV-03710-EMC, 2021 WL 5331451, at *10 (N.D. Cal. Nov. 16, 2021) (approving a PAGA penalty settlement of 2.2%). As for the portion of the settlement allocated to the unreimbursed business expense claim, even after deducting attorney's fees it represents almost half of Plaintiffs' best case possible outcome. A percentage of that magnitude weighs in favor of approval. *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1012 (E.D. Cal. 2019).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for preliminary approval is denied without prejudice.

**IT IS SO ORDERED.**

Dated: January 16, 2025



JON S. TIGAR
United States District Judge

5